UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 16-15** |
| **ERIC COTTRELL** | **SECTION: "G"(2)** |

## ORDER AND REASONS

Before the Court is Defendant Eric Cottrell's ("Cottrell") "Motion to Strike Surplusage."[1] Having considered the pending motion, the memorandum in support, the memorandum in opposition, the record testimony and the applicable law, the Court will deny the motion.

### I. Background

On January 28, 2016, a grand jury indicted Cottrell on charges of conspiracy to violate smuggling laws and the Lacey Act, violation of the Lacey Act and smuggling-export of protected turtles.[2] The indictment alleges that Cottrell conspired with Raymond Chiu to export Diamondback Terrapin turtles from Louisiana to China without proper lawful authority. On September 23, 2016, Cottrell filed the instant motion to strike surplusage from the indictment.[3] The Government filed its opposition to the instant motion on September 30, 2016.[4]

---

[1] Rec. Doc. 73.

[2] Rec. Doc. 13.

[3] Rec. Doc. 73.

[4] Rec. Doc. 79.

## II. Parties' Arguments

*A.   Cottrell's "Motion to Strike Surplusage"*

Cottrell asserts that this Court should strike surplusage from the indictment pursuant to Federal Rule of Criminal Procedure 7(d).[5] Cottrell quotes the Ninth Circuit stating that a motion to strike surplusage is designed to "protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges."[6]

Cottrell argues that the indictment "includes several paragraphs that appear to be for the sole purpose of inciting anger and possibly even fear from the jury."[7] He contends that Paragraph 1 of the "Legal Framework" section of the indictment provides a concise statement of the law, while Paragraphs 2 through 7 include extensive legislative history and the reasons for such a law.[8] Cottrell asserts that Paragraphs 2 through 7 are surplusage "meant only [to] evoke sympathy from the jury and to further reinforce the government's theory and importance placed on the case."[9]

As an example, Cottrell points to the statement that "[s]pecies listed on Appendix II of CITES may become threatened with extinction unless trade is strictly regulated."[10] He asserts that this statement contributes nothing to the jury's understanding of law or facts, and serves "as an additional request to the jury to become an enforcer of the law, beyond the instructions they

---

[5] Rec. Doc. 73 at 1.

[6] *Id.* (citing *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988)).

[7] Rec. Doc. 73-1 at 1.

[8] *Id.*

[9] *Id.*

[10] *Id.*

2

are already given."[11] Therefore, he contends that such language should be stricken to prevent undue prejudice.[12] Accordingly, Cottrell requests that Paragraphs 2 through 7 of the "Legal Framework" section of the indictment be stricken as surplusage.[13]

### B.     *The Government's Opposition*

The Government argues that Paragraphs 2 through 7 are relevant to the crimes charged, and there is no basis in law from which to strike the language.[14] The Government contends that "a motion to strike surplusage should only be granted if it is clear that the allegations are not relevant to the charge and are both inflammatory and prejudicial."[15] Therefore, the Government asserts that a motion to strike surplusage should only be granted in extreme situations when the language is irrelevant, inflammatory and prejudicial.[16]

The Government contends that Paragraphs 2 through 7 of the indictment are relevant to the explanation of the Lacey Act and what constitutes illegal activity under the Act.[17] The Government asserts that these paragraphs explain that trade in sea turtles is governed by CITES and that valid permits are required for exportation of animals under CITES.[18] Moreover, the Government contends that these paragraphs explain "the overall conduct prohibited by CITES,

---

[11] *Id.*

[12] *Id.*

[13] *Id.* at 2.

[14] Rec. Doc. 79 at 1.

[15] *Id*. at 2 (citing *United States v. Graves*, 5 F.3d 1546, 1550 (5th Cir. 1993); *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971)).

[16] *Id.*

[17] *Id*. at 4.

[18] *Id*.

the necessity of permits and regulations to be followed to export wildlife such as sea turtles under CITES, and the statutes and treaties that encompass the law for which Cottrell is charged."[19] The Government avers that "[s]uch language is necessary to explain the criminality of Cottrell's actions and the law prohibiting that action."[20] Accordingly, the Government argues that Paragraphs 2 through 7 should not be stricken because they contain relevant, non-prejudicial, non-inflammatory information.[21]

### III. Law and Analysis

*A.     Applicable Law*

Allegations in an indictment that are unnecessary to prove the crime charged are surplusage.[22] Federal Rule of Criminal Procedure 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." However, the striking of surplusage is not required as "[s]urplusage in the indictment may generally be disregarded where the charge is not materially broadened and the accused is not misled."[23] The level of proof required to strike surplusage from an indictment is "exacting."[24]

"For language to be struck from an indictment, it must be irrelevant, inflammatory, and prejudicial."[25] A court may strike as prejudicial "[t]he inclusion of clearly unnecessary language

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *United States v. Miller*, 471 U.S. 130, 136–37 (1985).

[23] *United States v. Quintero*, 872 F.2d 107, 111 (5th Cir. 1989) (citing *United States v. Trice*, 823 F.2d 80, 89 n. 8 (5th Cir.1987)).

[24] *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971).

[25] *United States v. Graves*, 5 F.3d 1546, 1550 (5th Cir. 1993).

4

in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved."[26] However, "[w]here information in an indictment is sufficiently relevant to the charged offense, the court should not strike it, no matter how prejudicial it may be."[27]

### B.     *Analysis*

Cottrell urges the Court to strike Paragraphs 2 through 7 of the "Legal Framework" section of the indictment, which provide:

> The United States and China, together with approximately 176 other countries, are signatories to a multilateral treaty called the Convention on International Trade in Endangered Species of Wild Fauna and Flora, 27 U.S.T. 1087, T.I.A.S. 8249 (commonly referred to as "CITES" or the "Convention"). CITES provides a mechanism for regulating international trade in species whose continued survival is considered threatened by trade. By agreement of the parties, species are listed on "appendices" based on the level of protection necessary to protect the species. International trade in species listed on the appendices is monitored and regulated by permits and quotas. The permit restrictions apply to live and dead specimens, as well as skins, parts, and products made in whole or in part from a listed species.
>
> Wildlife species in danger of extinction and which are, or may be, affected by trade (for example: tigers, pandas, elephants and all species of sea turtles) are listed on Appendix I of CITES. CITES allows very limited trade in Appendix I species for scientific and research purposes, and only if a valid "foreign export permit" issued by the specimen's country of origin (or a valid "foreign re-export certificate" issued by the country of re-export), as well as a valid "import permit" from the destination country, are obtained prior to shipping any such wildlife from one country to another. International trade in Appendix I species for "primarily commercial purposes" is prohibited.
>
> Species listed on Appendix II of CITES may become threatened with extinction unless trade is strictly regulated. Appendix II species are those for which trade is subject to strict regulation and is only authorized in particular circumstances. One such requirement is that the exporting country must issue a

---

[26] *Bullock*, 451 F.2d at 888.

[27] *United States v. Solomon*, 273 F.3d 1108, 2001 WL 1131955 (5th Cir. 2001).

5

foreign export permit (or valid foreign re-export permit) after being advised that (a) "such export will not be detrimental to the survival of that species," (b) "the specimen was not obtained in contravention of the laws of [the exporting Country] for the protection of fauna and flora;" and (c) "any living specimen will be so prepared and shipped as to minimize the risk of injury, damage to health or cruel treatment." CITES, Article IV.

Several species of turtles including, but not limited to, the North American Wood turtle (*Glyptemys Insculpta*) and Northern Diamondback Terrapin (*malaclemys terrapin*) have been listed on and protected by Appendix II of CITES.

CITES is implemented in the United States by the Endangered Species Act of 1973 (ESA), which directs the U.S. Fish and Wildlife Service (USFWS) to administer the treaty. 16 U.S.C. §§ 1537a, 1540(f). The ESA states that "[i]t is unlawful for any person . . . to engage in any trade in any specimens contrary to the provisions of [CITES], or to possess any specimens traded contrary to the provisions of [CITES]." 16 U.S.C. §§ 1538(c)(1) and 1540(b)(1). The requirements of CITES are also implemented through federal regulations, which require a CITES import permit, export permit, or re-export certificate prior to the importation or exportation of any CITES protected wildlife. 50 CFR § 23.13, 23.20, 23.35, 23.36, 23.37.

In addition to the requirements of CITES and the ESA, federal law generally requires that persons exporting wildlife from, or importing wildlife to, the United States, complete and sign a Declaration for Importation or Exportation of Fish or Wildlife (Form 3-177) prior to the importation or exportation of any wildlife. 50 CFR §§ 14.61, 14.63. Among other information, the form must list the CITES permit number authorizing the exportation of any CITES-protected species. Additionally, all exported wildlife must be made available for inspection by USFWS officers at least 48 hours prior to export. 50 CFR §§ 14.52, 14.54(f). The clearance and inspection requirements imposed by these regulations include presentation of any applicable CITES permits. Finally, individuals and businesses that import or export wildlife for commercial purposes must obtain a license from USFWS prior to importing or exporting wildlife. 50 CFR § 14.91.

Count 1 of the indictment charges Cottrell with conspiracy to violate smuggling laws and the Lacey Act, and Count 2 charges Cottrell with violating the Lacey Act. Paragraphs 2 through 7 of the "Legal Framework" section of the indictment provide an explanation of the Lacey Act and conduct that constitutes illegal activity under the Act. These paragraphs explain that trade in

specific species of turtles is governed by CITES and that permits are required for exportation of animals under CITES. These paragraphs are relevant because they explain the criminality of Cottrell's alleged conduct. Cottrell has not shown how these paragraphs will inflame the jury or confuse the issues. Accordingly, the Court will not strike Paragraphs 2 through 7 of the "Legal Framework" section from the indictment.

### IV. Conclusion

Based on the foregoing, the Court will not strike Paragraphs 2 through 7 of the "Legal Framework" section from the indictment because they are relevant to the charged offenses. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Eric Cottrell's ("Cottrell") "Motion to Strike Surplusage"[28] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this ___20th___ day of October, 2016.

*[signature]*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[28] Rec. Doc. 73.